Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW,**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112; Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, Esq., (SBN 330269)
Email: CC@Contreras-Law.com
Claire McCall, Esq., (SBN 354504)
Email: CM@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiff, A.B.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., an individual, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; ABEL CONCHO, an individual, and DOES 1 through 10, individually, jointly and severally, <br><br> Defendants. | **CASE NO.: 2:25-cv-11850** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Fourth Amendment Violation (42 U.S.C. § 1983); <br> 2. Eighth Amendment Violation (42 U.S.C. § 1983); <br> 3. Fourteenth Amendment Violation – Due Process (42 U.S.C. § 1983); <br> 4. Failure to Intervene (42 U.S.C. § 1983); <br> 5. Supervisory Liability (42 U.S.C. § 1983); <br> 6. Federal Tort Claim Act - Negligence; <br> 7. Federal Tort Claim Act - Sexual Assault; <br> 8. Federal Tort Claim Act - Sexual Battery; <br> 9. Federal Tort Claim Act - Violation of California Civil Code § 52.4 (Gender Violence); <br> 10. Federal Tort Claim Act - Violation of California Civil Code § 52.1 (Tom Bane Act) <br><br> **DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      This is a civil rights case arising out of the sexual abuse of A.B. over a period of years while incarcerated at Metropolitan Detention Center ("MDC") in Los Angeles, California.

2.      A.B. first arrived at MDC in October 2008 and was approximately five months pregnant at the time. Shortly after her arrival, correctional officer Defendant ABEL CONCHO began sexually assaulting and abusing her until she was transferred to a different facility in 2011.

3.      Under the guise of concern for her pregnancy, ABEL CONCHO began providing A.B. with special access and treatment in order to groom him for his sexual abuse. He would provide her with extra food, special treats, additional time outside her cell, and phone access. However, these unauthorized privileges had a grave cost.

4.      Shortly after giving birth, ABEL CONCHO began sexual assaulting A.B. by taking to her secluded areas of the facility such as the correctional officers' office or blind spots within the sallyport area. ABEL CONCHO orally, vaginally, and anally penetrated her on numerous occasions. ABEL CONCHO also forced A.B. to touch her private areas while he was watching and take nude photos of herself for his sexual pleasure.

5.      Worse yet, ABEL CONCHO's abuse of A.B. was widely known among the other employees at MDC. Yet the other correctional officers and the supervisors turned a blind eye to or helped conceal ABEL CONCHO's conduct. This allowed ABEL CONCHO to abuse A.B. for years without any repercussions.

6.      On August 15, 2022, Defendants ABEL CONCHO was convicted and formally sentenced for his sexual abuse of A.B. A.B. now brings a lawsuit for damages.

## **JURISDICTION AND VENUE**

7.      This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and 28 U.S.C. §2671, *et. seq.*, Federal Tort Claims Act.

**COMPLAINT FOR DAMAGES**

8.    Plaintiff filed a claim under the Federal Tort Claims Act. Plaintiff has exhausted her administrative remedies and obtained the relief that the administrative remedies could afford.

9.    Plaintiff has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

10.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiff' claims occurred within this district.

11.    With respect to timeliness of suit, on August 15, 2022, Defendants ABEL CONCHO was sentenced to a prison term today for lying to investigators about his sexual activity with A.B. who was under his care and supervision. Defendants ABEL CONCHO was sentenced by United States District Judge R. Gary Klausner to a total of six months – three months in federal prison and an additional three-month term of home confinement. Defendants ABEL CONCHO pleaded guilty in November 2021 to one count of making false statements.[1]

12.    As provided in Government Code Section 945.9:

(a) A claim arising out of an alleged sexual assault by a law enforcement officer if the alleged assault occurred while the officer was employed by a law enforcement agency is exempted from all state and local government claim presentation requirements.

(b) Notwithstanding any other law, the time for commencement of a claim seeking to recover damages arising out of an alleged sexual assault by a law enforcement officer, if the alleged sexual assault occurred on or after the plaintiff's 18th birthday and while the officer was employed by a law enforcement agency, shall be the later of either of the following dates:

---

[1] Press Release by United States Department of Justice: https://www.justice.gov/usao-cdca/pr/former-federal-correctional-officer-sentenced-prison-lying-about-engaging-unlawful

**COMPLAINT FOR DAMAGES**

(1) Within 10 years after the date of judgment against a law enforcement officer in a criminal case for a crime of sexual assault or a judgment against a law enforcement officer for a different crime if a crime of sexual assault was alleged and the crime for which there was a judgment against a law enforcement officer arose out of the same set of operative facts as the allegation of sexual assault in the present claim.

(2) Within 10 years after the law enforcement officer is no longer employed by the law enforcement agency that employed the officer when the alleged sexual assault occurred.

13.    Given that Defendants ABEL CONCHO was convicted and formally sentenced on August 15, 2022 for sexually assaulting Plaintiff A.B., the instant suit is timely brough.

## PARTIES

**A. Plaintiff**

14.    Plaintiff A.B. is and was, at all times relevant hereto, a resident of the County of Los Angeles, California, and was a female detainee MDC. Plaintiff brings her claims individually on the basis of *Bivens* and the Federal Torts Claim Act.

**B. Defendants**

15.    Defendant UNITED STATES OF AMERICA (hereinafter also "USA") is the appropriate defendant for claims brought pursuant to the FTCA. 28 U.S.C. § 1346(b). BUREAU OF PRISONS (hereinafter also "BOP") employs Defendant ABEL CONCHO and other Doe Defendants in this action. At all times relevant to the facts alleged herein, USA and BOP were responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including BOP employees, complied with the laws and the Constitutions of the United States and of the State of California USA and BOP were responsible for ensuring the protection and safety of all persons in the custody of the BOP, including detainees at MDC.

///

**COMPLAINT FOR DAMAGES**

16.     Defendant ABEL CONCHO (hereinafter also "CONCHO"), at all times mentioned herein, was employed by USA and BOP as a correctional officer at the MDC and was acting within the course and scope of that employment. At all times mentioned herein, Defendant CONCHO was assigned to work as a correctional officer at MDC and was responsible for carrying out USA and BOP policies and procedures and for ensuring the protection and safety of the female detainees assigned to him. The present defendant is sued in his individual capacity for damages. At all times relevant hereto, the present defendant was acting under the color of law.

17.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein. Plaintiff will amend the complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

18.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to Plaintiff who therefore sues these defendants by fictitious names. Plaintiff is informed, believes, and thereupon alleges that DOES 1 through 10 include individual law enforcement personnel and/or correctional officers employed by the USA and BOP and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiff will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained.

19.     Plaintiff is informed, believes, and thereupon alleges that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 10 were and still are residents of the County of Los Angeles, California. DOES 1 through 10 are sued in both their individual and official capacities.

20.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by,

among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of USA and BOP detainees despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

21.     Plaintiff is informed and believes and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

22.     Plaintiff is informed, believes, and thereupon alleges that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

23.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

24.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

///

///

///

**COMPLAINT FOR DAMAGES**

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

25.    In October 2008, A.B. was arrested and incarcerated at MDC Los Angeles. A.B. was approximately five months pregnant at this time with a baby due in February 2009.

26.    Almost immediately, Defendant ABEL CONCHO began grooming A.B. for abuse, knowing A.B. was dually vulnerable as a pregnant incarcerated woman.

27.    ABEL CONCHO first posed himself as a concerned and kind officer, making sure that A.B., due to her pregnancy, was provided extra food and time outside of her cell. ABEL CONCHO would ensure that A.B. was quickly taken to and from her cell whenever she had to go to hospital visits, court, or be transported to different areas of the facility. ABEL CONCHO would even bring special treats for A.B. such as pepperoni pizza.

28.    Once ABEL CONCHO established a trusting relationship with A.B., this guise of concern morphed into sexual victimization. Shortly after A.B. gave birth, ABEL CONCHO's concern turned to abuse.

29.    ABEL CONCHO began following A.B. in the shower and would watch her undress and shower.

30.    Then, ABEL CONCHO turned his grooming physical. ABEL CONCHO would insist upon being the person to escort A.B. to medical visits. When in a blind spot of the cameras in the sallyport area, ABEL CONCHO kissed A.B.

31.    On the next occasion when ABEL CONCHO escorted A.B. to a medical visit, ABEL CONCHO inappropriately touched or "felt up" A.B. while in the sallyport. Then, on the next medical visit, ABEL CONCHO stuck his hands in A.B.'s pants while in the sallyport. The abuse progressed quickly this way as ABEL CONCHO as he tested the waters to see how A.B. would react.

32.    It became understood between ABEL CONCHO and A.B. that he expected her to request to be taken to medical during the shifts he worked so that he could personally escort her and use her for his sexual pleasure.

33.     ABEL CONCHO then escalated his abuse by requiring increasingly sexual favors in order to continue the unauthorized privileges he had been providing A.B.

34.     ABEL CONCHO escalated into coercing A.B. into inappropriate sexual acts, all while knowing sexual conduct between incarcerated individuals and correctional officers was strictly forbidden.

35.     ABEL CONCHO would have A.B. "clean the office" used by the correctional officers at least once or twice a week. Once A.B. was in the office, a secluded area of the facility, ABEL CONCHO was able to finally achieve his true goal, sexually assaulting A.B.

36.     ABEL CONCHO would often have A.B. be assigned to kitchen duty in order to have access to her during certain hours when there were fewer individuals around.

37.     ABEL CONCHO had A.B. "clean the office" or work kitchen duty in order to get her alone in secluded areas so he could sexually assault her.

38.     ABEL CONCHO penetrated A.B. no fewer than thirty-five (35) times between 2008 and 2011. ABEL CONCHO also sodomized A.B. on numerous occasions.

39.     Further, ABEL CONCHO forced A.B. to perform oral sex on him, or "clean his penis with her mouth," numerous times.

40.     When ABEL CONCHO was assigned to work the overnight shift and was unable to have A.B. removed from her cell to "clean the office," he would stand outside her cell at night and instruct her to touch or "play" with herself in her genital area.

41.     During a facility lockdown, ABEL CONCHO went to A.B.'s cell, opened the door, and gave A.B. his personal phone. ABEL CONCHO instructed A.B. to take erotic nude images of herself with the phone for ABEL CONCHO's sexual gratification.

///

**COMPLAINT FOR DAMAGES**

42. ABEL CONCHO's abuse of A.B. was widely known and affirmatively covered up by the actions of other correctional officers, DOES 1-10.

43. Other correctional officers and supervisors would announce themselves before entering the office while ABEL CONCHO was abusing A.B.

44. Upon information and belief, ABEL CONCHO was a habitual serial sexual predator, having multiple victims before A.B.

45. ABEL CONCHO was brazened, open, and audacious in his abuse of A.B., believing he was invincible thanks to his status as a correctional officer in the Bureau of Prisons environment.

46. As an inmate, A.B. felt helpless to stop this abuse. She felt unable to report to ABEL CONCHO's despicable conduct for fear of repercussions and felt such reporting would be useless as the other correctional officers and supervisors were well aware of the sexual abuse.

47. Further, A.B. felt forced to participate based upon her status as an inmate and the power ABEL CONCHO had over her circumstances.

48. A.B.'s abuse finally ended when A.B. was transferred to a correctional facility in Tallahassee, Florida, in 2011, severing ABEL CONCHO's grasp on A.B.

49. In 2019, the Federal Bureau of Investigation opened an investigation into ABEL CONCHO for his sexual abuse of incarcerated women under his care.

50. Indeed, ABEL CONCHO was so audacious and brazen in his infallibility as a correctional officer that when federal investigators questioned ABEL CONCHO about his relationship with A.B., he claimed to have never engaged in sexual conduct with A.B.

51. Upon further questioning, ABEL CONCHO admitted that he perhaps engaged in sexual intercourse with A.B. "once or twice".

52. In truth, ABEL CONCHO ultimately pled to engaging in no fewer than *thirty-five* (35) separate incidents of sexual contact with A.B. This does not include the innumerous occasions in which A.B. was pressured to provide erotic photos, or undress

or shower for ABEL CONCHO's gratification.

53.  Miraculously, A.B.'s diary that she kept while incarcerated which detailed the numerous sexual assaults perpetrated upon her by ABEL CONCHO along with other physical evidence of these assaults, including a napkin containing ABEL CONCHO's ejaculation which A.B. spit out after he forced her to perform oral sex or "clean his penis with her mouth," was maintained throughout A.B.'s time in custody and was given to FBI investigators.

54.  In 2021, ABEL CONCHO accepted a plea deal for three (3) months in prison for lying to federal agents about not having had sexual contact with A.B. Supporting his feelings of invulnerability, ABEL CONCHO served no time at all for his sexual victimization of A.B.

55.  A.B. has been left to deal with the ongoing and serious effects of being sexually abused by ABEL CONCHO. This includes requiring years of therapy and ongoing psychiatric medication to manage her trauma, depression, and anxiety caused by ABEL CONCHO's abuse. Further, A.B. struggles to trust authority figures for fear of further sexual victimization.

### FIRST CLAIM FOR RELIEF

**Fourth Amendment Violation**

**(*Bivens*)**

**By Plaintiff As Against Defendants ABEL CONCHO**

**and DOES 1 through 5**

56.  Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

57.  This claim is brought pursuant to *Bivens* and the Fourth and Fifth Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

58.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

*Torres v. Madrid*, 592 U.S. 306, 311 (2021). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure for the purposes of the Fourth Amendment "requires either physical force ... or, where that is absent, submission to the assertion of authority." *Torres v. Madrid*, 592 U.S. 306, 311 (2021). An officer has made a "show of authority" when an officer's words and actions would convey to a reasonable person "that he was being ordered to restrict his movement." *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

59.   "Beyond the specific proscription of excessive force, the Fourth Amendment generally proscribes "unreasonable intrusions on one's bodily integrity,' . . . . and other harassing and abusive behavior that rises to the level of 'unreasonable seizure.'" *Fontana v. Haskin*, 262 F.3d 871, 878–79 (9th Cir. 2001) (determining that police officer's "sexual verbal and physical predation against a handcuffed arrestee" on ride to police station violated Fourth Amendment) (citations omitted). The Fourth Amendment bars intrusion into the body "which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State")

60.   As alleged above, Defendant CONCHO, while acting under color of law, submitted Plaintiff to his authority as a BOP correctional officer. Indeed, Defendant CONCHO's entire scheme to sexually abuse A.B. was predicated on wielding his authority in order to have Plaintiff submit to his sexual demands. It was clear to Plaintiff that Defendant CONCHO's commands and orders restricted her movement in violation of Plaintiff's Fourth Amendment rights.

61.   Furthermore, Defendant CONCHO's conduct also constituted an unreasonable intrusions on Plaintiff's bodily integrity in further violation of Plaintiff's Fourth Amendment rights. In fact, Defendant CONCHO's intrusion into Plaintiff's

body were not justified under any circumstance. Clearly, Defendant CONCHO's intrusion into Plaintiff's body was made for the improper purpose of satisfying Defendant CONCHO's sexual impulses.

62.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

63.    The conduct of Defendant CONCHO entitles Plaintiff to punitive damages and penalties allowable under *Bivens* and as provided by law.

64.    Plaintiff is also entitled to reasonable costs and attorneys' fees under *Bivens*, and other applicable United States codes and laws

## SECOND CLAIM FOR RELIEF

### Eighth Amendment Violation

### (*Bivens*)

### By Plaintiff As Against Defendants ABEL CONCHO

### and DOES 1 through 5

65.    Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

66.    This claim is brought pursuant to *Bivens* and the Fourth and Fifth Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

67.    The Eighth Amendment protects prisoners from cruel and unusual punishment. Whether an act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

68.    "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eight Amendment." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012). "In the simplest and most absolute of terms. . . prisoners [have an Eighth Amendment right] to be free from sexual abuse." *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). "Rape, coerced sodomy, unsolicited touching of women

prisoners' vaginas, breasts and buttocks by prison employees are 'simply no part of the penalty that criminal offenders pay for their offenses against society.'" *Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia*, 877 F.Supp.634, 665 (D.D.C. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

69.   "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Wood*, 692 F.3d at1046 (quoting *Hudson*, 503 U.S. at 8).

70.   As alleged above, Defendant CONCHO, while acting under color of law and as correctional officer employed by BOP, sexually abused Plaintiff.

71.   Defendant CONCHO repeatedly raped, sodomized, and touched A.B. while she was in custody and under his supervision as a correctional officer.

72.   Defendant CONCHO intentionally engaged in this egregious conduct in order to satisfy his sexual desires.

73.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

74.   The conduct of Defendant CONCHO entitles Plaintiff to punitive damages and penalties allowable under *Bivens* and as provided by law.

75.   Plaintiff is also entitled to reasonable costs and attorneys' fees under *Bivens*, and other applicable United States codes and laws

## THIRD CLAIM FOR RELIEF

### Fourteenth Amendment Violation – Substantive Due Process

### (*Bivens*)

### By Plaintiff As Against Defendants ABEL CONCHO

### and DOES 1 through 5

76.   Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

77.   This claim is brought pursuant to *Bivens* and the Fourth and Fifth

13

Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

78.    The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const., Amdt. 14, § 1. The Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989).

79.    The Fourteenth Amendment protects an individual's right to bodily privacy. Both prisoners and pretrial detainees have the right to bodily privacy under the Fourteenth Amendment. *Vazquez v. County of Kern*, 949 F.3d 1153, 1160 (9th Cir. 2020).

80.    Under the Fourteenth Amendment's substantive due process prong, courts use the "shocks the conscience" test to determine if a violation has occurred. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 848 n. 8. Sexual predation can be "unjustifiable by any government interest." *Fontana v. Haskin*, 262 F.3d 871, 882 n. 7 (9th Cir. 2001). Sexual predation can be an "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)).

81.    At all relevant times, Defendant CONCHO was acting under color of law.

82.    As alleged above, Defendant CONCHO groomed, preyed upon, and sexually exploited Plaintiff forcing Plaintiff to comply with Defendant CONCHO's sexual demands.

83.    Indeed, Defendant CONCHO abused his power as a BOP correctional officer by exploiting and victimizing Plaintiff in order to satisfy his sexual desires.

Defendant CONCHO sexually preyed upon Plaintiff and took advantage of Plaintiff's vulnerabilities.

84. Defendant CONCHO's conduct clearly shocks the conscience in violation of Plaintiff's Fourteenth Amendment rights.

85. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

86. The conduct of Defendant CONCHO entitles Plaintiff to punitive damages and penalties allowable under *Bivens* and as provided by law.

87. Plaintiff is also entitled to reasonable costs and attorneys' fees under *Bivens*, and other applicable United States codes and laws

## FOURTH CLAIM FOR RELIEF

### Failure to Intervene

### (*Bivens*)

### By Plaintiff As Against Defendants DOES 1 through 10

88. Plaintiff realleged and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

89. This claim is brought pursuant to *Bivens* and the Fourth and Fifth Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

90. This claim for relief is brought against Defendants DOES 1 through 10. DOES 1 through 10 acting under color of law as correctional officers and supervisors employed by BOP.

91. The Ninth Circuit has clearly held that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir.2000) (citing *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994), rev'd on other grounds, 518 U.S. 81 (1996)). "[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 229 F.3d 1289. "[T]he constitutional

right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, *supra,* 34 F.3d at 1447 n. 25.[2]

92.    Defendants DOES 1 through 10 failed to intervene or intercede when they were made aware that Defendant CONCHO was exploiting, abusing, and taking advantage of Plaintiff A.B.

93.    Upon information and belief, Defendants DOES 1 through 10 knew the intimate details of Defendant CONCHO's scheme to sexually abuse A.B.

94.    Upon information and belief, Defendants DOES 1 through 10 knew that Defendant CONCHO was sexually assaulting and abusing Plaintiff.

95.    Upon information and belief, Defendant DOES 1 through 10 had the power to report Defendant CONCHO's sexual abuse of A.B. and/or take action to stop Defendant CONCHO's abuse of A.B. but failed to do so.

96.    Furthermore, upon information and belief, given that Defendants DOES 1 through 10 were aware of Defendant CONCHO's sexual abuse of Plaintiff, Defendants DOES 1 through 10 were mandated to report the sexual abuse as a mandated reporter. *See* Welfare and Institutions Code Section 15630(a);(b)(1). As provided in Welfare and Institutions Code Section 15630, "[a] person who has assumed full or intermittent responsibility for the care or custody of an elder or dependent adult, whether or not they receive compensation, including administrators, supervisors, and any licensed staff of a public or private facility that provides care or services for elder or dependent adults, or any elder or dependent adult care custodian, health practitioner, clergy member, or employee of a county adult protective services agency or a local law

---

[2] While the case law generally derives from fellow officers failing to intervene in a constitutional violation, the reasoning for the holdings in *Koon* and *Cunningham* applies here. Indeed, one who is given authority may not ignore the duty imposed by their position and fail to stop another person who summarily punish a third person in their presence or otherwise within his knowledge. A failure to intervene is a neglect of duty. *See Koon, supra* ,34 F.3d at 1447 n. 25 (citing *Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir. 1981)).

**COMPLAINT FOR DAMAGES**

enforcement agency, is a mandated reporter."

97.  Defendants DOES 1 through 10 had a legally mandatory obligation to report Defendant CONCHO's sexual abuse of Plaintiff yet failed to do so.

98.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

99.  Therefore, Defendants DOES 1 through 10 conduct was also the moving force behind Plaintiff's constitutional violations given that Plaintiff's constitutional violations could not have occurred without Defendants DOES 1 through 10 conduct and participation in the conspiracy as well as their failure to intervene.

100.  Accordingly, Defendants DOES 1 through 10 are equally as liable for Defendant CONCHO's violations.

101.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

102.  The conduct of Defendant CONCHO entitles Plaintiff to punitive damages and penalties allowable under *Bivens* and as provided by law.

103.  Plaintiff is also entitled to reasonable costs and attorneys' fees under *Bivens*, and other applicable United States codes and laws

## FIFTH CLAIM FOR RELIEF

### Supervisory Liability

### (*Bivens*)

### By Plaintiff As Against Defendants DOES 8 through 10

104.  Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

105.  This claim is brought pursuant to *Bivens* and the Fourth and Fifth Amendments to the United States Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

106.  At all material times, Defendants DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate,

investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the BOP.

107. Defendants DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendant CONCHO and BOP personnel, with deliberate indifference to Plaintiff', and others' constitutional rights, which were thereby violated as described above.

108. As supervisors, Defendants DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while in BOP custody. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff' rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, or knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff' rights, and in fact did cause the violation of Plaintiff rights. (*See* Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff' rights.

109. The unconstitutional actions and/or omissions of Defendants CONCHO and 1 through 10, and other BOP personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the BOP, including Defendants DOES 8 through 10.

110. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants DOES 8 through 10 and that such

18

Defendant-policymakers have direct knowledge of the fact that CONCHO was sexually abusing and preying upon Plaintiff, but continued to carry out their duties and responsibilities with deliberate indifference to Plaintiff' rights to be protected from sexual abuse and conduct which shocked the conscious as set forth above.

111.   Notwithstanding this knowledge, on information and belief, Defendants DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants CONCHO and DOES 1 through 7 in this matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the sexual abuse of Plaintiff. By so doing, Defendants DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

112.   Furthermore, Plaintiff are informed and believe, and thereupon allege, that Defendants DOES 8 through 10 and other policymaking officers for BOP were and are aware of a pattern of misconduct and injury, and a code of silence, caused by BOP correctional officers similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the BOP.

113.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff herein, sustained injuries and damages.

114.   The conduct of Defendant CONCHO entitles Plaintiff to punitive damages and penalties allowable under *Bivens* and as provided by law.

115.   Plaintiff is also entitled to reasonable costs and attorneys' fees under *Bivens*, and other applicable United States codes and laws

### SIXTH CLAIM FOR RELIEF

### Federal Tort Claim Act - Negligence

### By Plaintiff As Against UNITED STATES OF AMERICA

116.   Plaintiff realleage and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

117.    Under the FTCA, the United States is liable "to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Indeed, since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").

118.    At all times, Defendants CONCHO and DOES 1-10 owed Plaintiff a duty of care.

119.    These general duties of care and due care owed to Plaintiff by Defendant CONCHO include but are not limited to the specific obligations to not engage in any of the following behavior:

    A. Sexually grooming female detainees and prisoners;

    B. Sexually preying upon female detainees and prisoners;

    C. Sexually exploiting female detainees and prisoners;

    D. Sexually assaulting female detainees and prisoners;

    E. Unsolicited touching of female detainees and prisoners;

    F. Sexually relations with female detainees and prisoners;

    G. Taking advantage of female detainees and prisoners for sexual purposes;

    H. Improperly overseeing female detainees and prisoners;

    I. Using personal cell phones to communicate with female detainees and prisoners;

    J. Engaging in sexually improper conduct while on duty;

    K. Abusing position to gain access to female detainees and prisoners and create the opportunity to sexually assault or abuse female detainees and prisoners.

///

///

**COMPLAINT FOR DAMAGES**

120.   These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

    A. Ignoring improper communications between correctional officers and female detainees and prisoners;

    B. Ignoring sexual communications between correctional officers and female detainees and prisoners;

    C. Failing to report improper communications and conduct by other correctional officers;

    D. Failing to report sexual communications and conduct by other correctional officers.

121.   Defendants CONCHO and DOES 1-10 through their acts and omissions breached each and every one of the aforementioned duties owed to Plaintiff.

122.   As a direct and proximate result of these Defendants CONCHO and DOES 1 through 10 negligence, Plaintiff sustained injuries and damages.

## SEVENTH CLAIM FOR RELIEF

### Federal Tort Claim Act - Sexual Assault

### By Plaintiff As Against UNITED STATES OF AMERICA

123.   Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

124.   Under the FTCA, the United States is liable "to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Indeed, since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").

125.   As alleged herein, Defendant CONCHO placed A.B. in imminent apprehension of harmful or offensive contact by CONCHO, and Plaintiff actually

believed CONCHO had the ability to make harmful or offensive contact with their persons.

126.    At all times, all acts by CONCHO upon Plaintiff were performed without Plaintiff's legal consent. Because of CONCHO's position of authority over Plaintiff, Plaintiff's vulnerability as a pregnant and incarcerated woman, and the inherently coercive nature of the carceral system, Plaintiff was unable to, and did not give valid, meaningful, legal consent to CONCHO's intended harmful or offensive contact with Plaintiff's person, or CONCHO's intent to put Plaintiff in imminent apprehension of such contact.

127.    As a direct and proximate result of Defendant CONCHO's conduct, Plaintiff sustained injuries and damages.

## EIGHTH CLAIM FOR RELIEF

### Federal Tort Claim Act - Sexual Battery

### By Plaintiff As Against UNITED STATES OF AMERICA

128.    Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

129.    Under the FTCA, the United States is liable "to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Indeed, since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").

130.    Defendant CONCHO committed a sexual battery on Plaintiff by making harmful and offensive contact with her body without her consent.

131.    Plaintiff is informed, believes, and herein alleges that all acts by CONCHO contained within this complaint, were committed intentionally, recklessly and wantonly to subject Plaintiff to unconsented, harmful and offensive sexual contact,

which were intended to, and did result in harmful and offensive sexual contact with A.B.'s person and intimate parts of her person, which would offend a reasonable sense of personal dignity.

132.    At all times, all acts by CONCHO upon Plaintiff were performed without Plaintiff's legal consent. Because of CONCHO's position of authority over Plaintiff, Plaintiff's vulnerability as a pregnant and incarcerated woman, and the inherently coercive nature of the carceral system, Plaintiff was unable to, and did not give valid, meaningful, legal consent to CONCHO's intended harmful or offensive contact with Plaintiff's person, or CONCHO's intent to put Plaintiff in imminent apprehension of such contact.

133.    As a result of the above-described conduct, A.B. has suffered emotional anguish, distress and pain; suffered physical injury; suffered generalized injury to the nervous system; and has incurred and will probably continue to incur expenses for medical treatment, all to Plaintiff' damages according to proof at trial.

134.    As a direct and proximate result of Defendant CONCHO's conduct, Plaintiff sustained injuries and damages.

**NINTH CLAIM FOR RELIEF**

**Federal Tort Claim Act - Violation of California Civil Code § 52.4**

**(Gender Violence)**

**By Plaintiff As Against UNITED STATES OF AMERICA**

135.    Plaintiff realleged and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

136.    Under the FTCA, the United States is liable "to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Indeed, since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place'

means law of the State—the source of substantive liability under the FTCA.").

137.   As alleged herein, Defendant CONCHO sexually assaulted and battered Plaintiff by intending to cause a harmful and offensive contact with Plaintiff' intimate body parts. Further, Defendant CONCHO also caused an imminent fear of a harmful or offensive contact with Plaintiff' intimate body parts. Clearly, Defendant CONCHO's intent was to cause a harmful or offensive contact with Plaintiff's body in a sexual manner.

138.   Pursuant to Civil Code § 52.4, for purposes of this section, "gender violence" is a form of sex discrimination and means either of the following:

(1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

139.   Furthermore, Defendant CONCHO committed a physical intrusion or physical invasion sexual in nature as detailed herein. The conditions of such physical intrusion or physical invasion were coercive because Defendant CONCHO was a correctional officer wielding disproportionate power over A.B. Such conduct is gender violence within the meaning of Civil Code § 52.4.

140.   As a direct and proximate result of Defendants CONCHO and DOES 1-10's conduct, Plaintiff sustained injuries and damages.

///

///

///

///

# TENTH CLAIM FOR RELIEF

## Federal Tort Claim Act - Violation of California Civil Code § 52.1

## (Tom Bane Act)

## By Plaintiff As Against UNITED STATES OF AMERICA

141.  Plaintiff realloge and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

142.  Under the FTCA, the United States is liable "to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Indeed, since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").

143.  By his act and omissions, Defendants CONCHO and DOES 1 through 10, through threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

A. To be free from bodily harm pursuant to Cal. Civ. Code § 43;

B. The right to be free from governmental interference as secured by the Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

C. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1.

144.  Defendant CONCHO's and DOES 1 through 10's violations of Plaintiff' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.

*///*

**COMPLAINT FOR DAMAGES**

145. Alternatively, separate from, and above and beyond, Defendants Defendant CONCHO's attempted interference, interference with, and violation of Plaintiff' rights as described above, Defendant violated Plaintiff's rights by the following conduct constituting threat, intimidation, or coercion:

    A. Sexually grooming female detainees and prisoners;

    B. Sexually preying upon female detainees and prisoners;

    C. Sexually exploiting female detainees and prisoners;

    D. Sexually assaulting female detainees and prisoners;

    E. Unsolicited touching of female detainees and prisoners;

    F. Sexually relations with female detainees and prisoners;

    G. Taking advantage of female detainees and prisoners for sexual purposes;

    H. Improperly overseeing female detainees and prisoners;

    I. Using personal cell phones to communicate with female detainees and prisoners;

    J. Engaging in sexually improper conduct while on duty;

    K. Abusing position to gain access to female detainees and prisoners and create the opportunity to sexually assault or abuse female detainees and prisoners.

146. Alternatively, separate from, and above and beyond, Defendants attempted interference, interference with, and violation of Plaintiff Plaintiff's rights as described above, Defendant violated Plaintiff' rights by the following conduct constituting threat, intimidation, or coercion:

    A. Ignoring improper communications between correctional officers and female detainees and prisoners;

    B. Ignoring sexual communications between correctional officers and female detainees and prisoners;

    C. Failing to report improper communications and conduct by other correctional officers;

26

**COMPLAINT FOR DAMAGES**

D. Failing to report sexual communications and conduct by other correctional officers.

147. Further, all of Defendant's violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

148. Further, Defendants CONCHO violated Plaintiff's rights with reckless disregard and with the specific intent and purpose to deprive her of their enjoyment of those rights and of the interests protected by those rights.

149. As a direct and proximate result of these Defendants CONCHO's and DOES 1 through 10's conduct, Plaintiff sustained injuries and damages.

150. As a direct and proximate result of Defendants CONCHO's violation of California Civil Code § 52.1 and of Plaintiff's rights under the Civil Code, United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to a multiplier of damages including treble damages, costs attorneys' fees, and civil penalties.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment as follows:

A. For economic and non-economic damages including but not limited to Plaintiff's physical, mental, and emotional pain and suffering, as well as all past, present, and future related medical expenses, in an amount according to proof at trial;

B. For damages pursuant to *Bivens*;

C. For a multiplier of damages, including treble damages, as authorized under both Cal. Civ. Code § 52 and § 52.1;

///

**COMPLAINT FOR DAMAGES**

D.   For civil penalties in the amount of $25,000 as authorized under both Cal. Civ. Code § 52 and§ 52.1;

E.   Damages and penalties pursuant to Civil Code Section § 1708.88;

F.   For punitive damages against the individual defendants in an amount to be proven at trial;

G.   For the reasonable attorneys' fees and costs allowed under 42 U.S.C. § 1988 and/or § 52 and § 52.1 in an amount to be proven at trial;

H.   For all other damages allowed under state and federal law, and;

I.   For such further relief as the Court may deem appropriate, proper, and just.

Dated: December 16, 2025        **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Attorneys for Plaintiff,
A.B.

Dated: December 15, 2025        **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiff,
A.B.

## DEMAND FOR JURY TRIAL

Plaintiff hereby make a demand for a jury trial in this action.

Dated: December 15, 2025        **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Attorneys for Plaintiff,
A.B.

**COMPLAINT FOR DAMAGES**

Dated: December 15, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                  **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiff,
A.B.

**COMPLAINT FOR DAMAGES**